### THE JOHN A. HUGHES.

### THE SCRANTON.

(Circuit Court of Appeals, Second Circuit. January 9, 1911.)

#### No. 93.

COLLISION (§ 61*)—MEETING TOWS IN FOG—ERROR IN STEERING.

A collision occurred in a dense fog between the barge Powell in tow moving eastward in Long Island Sound and the leading one of three barges in tow of a tug going westward; the courses of the two being nearly parallel. The tugs were both sounding fog signals, and when some distance apart, although they could not see each other, exchanged signals for passing port to port, and each ported her helm. The tows also heard the signals and all ported except the Powell, whose master ordered the helmsman to port, but the latter, misunderstanding the order or not understanding the wheel, which was a ship's wheel, starboarded instead, throwing the bow to port when her hawser parted, and she was soon afterward struck by the leading barge of the other tow. *Held*, that the proximate cause of the collision was the error of the Powell, and that she could not recover from the tugs, which were not chargeable with any fault contributing to the collision.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 61.*

Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

Appeals from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Baker Transportation Company, as owner of the barge Powell, against the steam tug John A. Hughes, James E. Hughes, claimant, and the steam tug Scranton, the Delaware, Lackawanna & Western Railroad Company, claimant. Decree for libelant (156 Fed. 879), and claimants appeal. Reversed.

Carpenter & Park (Samuel Park, of counsel), for the John A. Hughes.

William S. Jenney (William S. McGuire, of counsel), for the Scranton.

James J. Macklin (De Lagnel Berier, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. March 18, 1905, at about 9:30 a. m. in a dense fog the steam tug John A. Hughes at the eastern end of Long Island Sound was proceeding on a voyage from Philadelphia to Providence with the coal laden barge Powell astern on a hawser 125 fathoms long. At the same time and in the same water the steam tug Scranton was proceeding from Boston to New York with three light barges astern tandem; the towing hawser to the first barge, the Shickshinny, being 200 fathoms long. The fog had shut in about 7 a. m. Each tug was blowing at intervals of not more than one minute fog signals of one long followed by two short blasts as required by article 15 of the inland regulations (Act June 7, 1897, c. 4, 30 Stat. 99 [U. S. Comp. St. 1901, p. 2880]). The tugs were approaching each on the port bow of the other on almost opposite courses. The tide was ebb, running to the eastward about two miles an hour. The tugs were going at a moderate speed. The Scranton although hooked up, was bucking the tide and making about three miles over the bottom, and the Hughes with the tide was making about four miles.

When at a distance apart variously estimated and neither seeing the other, the Scranton blew one long blast and the Hughes answered with one. This signal is one not provided by the inland regulations, but is commonly used by tugs as a helm signal to their tows. On this occasion, it was used by the tugs for their own guidance, and each understood and acted upon it by porting. Although not blown to the tows, it was heard and understood by them, and, even if this had not been so, it was their duty to follow their tugs. The tow of the Scranton did so by porting, but the Powell starboarded. The master of the Powell gave the order to the man at the wheel to port and he rolled the wheel to port which, being a ship's wheel, threw the bow to port, instead of to starboard, as the master had intended. Thereupon the hawser parted. The barge sheered off under her starboard helm between the tug Scranton and the barge Shickshinny, parting their towing hawser and being struck on the starboard side about amidships by the Shickshinny, sustaining the damage complained of in this case.

The libelant admits the error of the wheelsman of the barge, but lays great stress upon the question whether his mistake occurred before or after the hawser parted. We do not appreciate the importance of this because the sheer would have taken place in either case. The hawser belonged to the Powell and is admitted to have been a good nine-inch manilla line, entirely sufficient for the towing. The libelant contends that it parted as the result of the tug's porting suddenly. This seems to us very unlikely. There was no need of sudden porting on the tug's part, and her witnesses say that she ported gradually and did not increase her speed. We think it much more likely that the excessive strain was caused by the barge's starboarding when the tug ported.

The district judge directed a decree in favor of the libelant against both tugs, and closed his opinion as follows:

"The question to be determined is, Was the barge responsible for the collision in view of the wrong maneuver made by her? I do not think she was, but that turning the wheel the wrong way was in consequence of the previous faults of the tugs in navigating during such weather, and in not stopping

when whistles were heard ahead. The fog was so dense that some of the witnesses said that they could not see more than 20 feet. While others made larger estimates, 200 to 300 feet, it is conceded by the tugs that the fog was very thick. I consider that the faults of the tugs were the proximate causes of the collision. When the mistake was made on the barge, the vessels were almost in collision, and the error of the barge should not prevent her from collecting the damages which she sustained in consequence of the tugs' manifest faults."

We do not concur in this conclusion. It seems to us perfectly clear that the proximate cause of the collision was the Powell's sheer, and that but for it there would have been no collision. There is no ground whatever for saying that the error of the Powell was caused by the tugs' navigating in fog, or by their not stopping when whistles were heard ahead. If these acts or either of them were faults and contributed to the collision, the decree of the court below would be justified. But it was not a fault for the tugs to continue in a fog which came on during the course of the voyage. In respect to stopping, article 16 of the inland regulations provides:

"Art. 16. Every vessel shall, in a fog, mist, falling snow, or heavy rainstorms, go at a moderate speed, having careful regard to the existing circumstances and conditions. A steam vessel hearing, apparently forward of her beam, the fog signal of a vessel the position of which is not ascertained shall, so far as the circumstances of the case admit, stop her engines, and then navigate with caution until danger of collision is over."

By good luck or by good management the tugs did ascertain their relative positions correctly and agreed upon a course of navigation which would have carried them and their tows clear of each other but for the Powell's sheer. If their tows had come into collision without the intervention of this independent cause, their failure to stop would have put them at fault. On the facts of the case we cannot agree that it contributed to the collision at all.

It is next objected that, as rule 9 of the inland regulations forbids the use of helm signals when vessels cannot see each other, the exchange of the long blast between the tugs was a violation of law which makes them liable. Conceding that this was a violation of law, it clearly did not contribute to the collision. On the contrary, it established an agreement which took the tugs and would have taken the tows clear of each other, but for the Powell's sheer. If the tows had come into collision without this intervening proximate cause, their navigation and reliance upon helm signals when they could not see each other would justify the decree of the court below.

Finally, it is said that the mistake of the wheelsman of the Powell was excusable as an act in extremis. We do not think so. There was nothing exciting in the situation. The master of the Powell knew that it was his duty to follow his tug, and he gave the natural and proper order to that end. The man at the wheel, either thinking that it was an order for the wheel as distinguished from the helm or being unaccustomed to a ship's wheel, did exactly the opposite. There is nothing to show that he did so because of any excitement or of any imminent danger.

The decree is reversed, with costs.